**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**THOMAS J. O'BRIEN**
O'Brien & Dekker
Lafayette, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RYAN D. JOHANNINGSMEIER**
Deputy Attorney General
Indianapolis, Indiana

**FILED**

Dec 31 2012, 10:56 am

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

DANDRE MATLOCK,                     )
                                    )
    Appellant-Defendant,            )
                                    )
        vs.                      )     No. 79A02-1205-CR-465
                                    )
STATE OF INDIANA,                   )
                                    )
    Appellee-Plaintiff.             )

APPEAL FROM THE TIPPECANOE CIRCUIT COURT
The Honorable Donald L. Daniel, Judge
Cause No. 79C01-1108-FA-17

**December 31, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

## Case Summary

A jury convicted Dandre Matlock of dealing in cocaine, possession of cocaine and marijuana, maintaining a common nuisance, and two counts of neglect of a dependent. On appeal, Matlock argues that the trial court erred in admitting evidence relating to the search of his home, which was conducted pursuant to a warrant. Because Matlock never challenged the validity of the warrant at trial, we conclude that he has waived his argument. Therefore, we affirm his convictions.

## Facts and Procedural History

On the night of August 10, 2010, Lafayette Police Department Officers Nathan Lamar, Michael Barthelemy, and Adam Mellady attempted to execute an arrest warrant for Richard Hawkins. The officers went to Hawkins's wife's home and parents' home and were unable to locate him there. The officers knew that Matlock was a "close associate" of Hawkins, so they went to look for Hawkins at Matlock's West Lafayette townhome. Tr. at 71.[1] Officer Lamar went to the front door. Officer Barthelemy went to the back of the townhome in case someone attempted to escape from a rear entrance, and Officer Mellady stood outside the kitchen window in the side yard.

Officer Barthelemy stood on Matlock's back patio, which was "very close" to a "common walkway" that encircled a neighborhood pond. *Id.* at 73. Through the sliding glass patio door, Officer Barthelemy saw a man later identified as Carman Paccelli standing

---

[1] Matlock's counsel has included portions of the trial and suppression hearing transcripts in the appellant's appendix in violation of Indiana Appellate Rule 50(F), which provides, "Because the Transcript is transmitted to the Court on Appeal pursuant to Rule 12(B), parties should not reproduce any portion of the Transcript in the Appendix."

at a kitchen counter next to Matlock. Digital scales and several sandwich baggies were on the counter. Officer Barthelemy saw Paccelli hold up a baggie corner that appeared to contain cocaine. Officer Mellady joined Officer Barthelemy, who told him what he had seen. Officer Barthelemy then went to the front door and repeated this information to Officer Lamar.

Officer Lamar knocked on the front door. Matlock asked who it was, and Officer Lamar identified himself. Matlock went into a hallway, told Paccelli to flush the cocaine down a toilet, and eventually returned to the front door. Officer Lamar asked Matlock to open the door and speak with him, and he did so. Officer Lamar said that they were looking for Hawkins, and Matlock replied that he had not seen or heard from him recently. Matlock said that his girlfriend, a male friend, and his two children were inside the house. When Officer Lamar asked whether the male friend was Hawkins, Matlock had Paccelli come to the door. Officer Lamar had Paccelli speak with Officer Barthelemy.

Officer Barthelemy noticed that the front pockets of Paccelli's jeans were "just stuffed" and asked permission to pat him down. *Id*. at 76.[2] Paccelli consented and allowed Officer Barthelemy to remove items from his pockets. Officer Barthelemy found a marijuana pipe, digital scales, cocaine, and other narcotics. Officer Barthelemy then spoke with

---

[2] The State says, "Concerned that Paccelli may have been concealing a weapon, Officer Barthelemy asked him if he had any weapons on his person and whether he could pat him down. Paccelli denied having any weapons and granted Officer Barthelemy permission to pat him down." Appellee's Br. at 7 (citing Tr. at 76-77). This portion of the transcript does not indicate that Officer Barthelemy was "concerned" that Paccelli may have been concealing a weapon, nor does it indicate that Paccelli denied having any weapons. *See* Tr. at 76 ("At that point I asked—I asked if [Paccelli] had any weapons on him. I asked if I could pat him down and he said yes.").

Paccelli and began the process of obtaining a search warrant for Matlock's home and attached garage. Matlock's girlfriend came outside and "advised that she had two small children in the house and that she would like for them to be removed from the house." *Id.* at 91. Officer Mellady accompanied the girlfriend upstairs and "helped her carry the children outside." *Id.*

The officers eventually obtained and executed a search warrant and found several allegedly stolen firearms, a marijuana grinder with marijuana residue, and almost 120 grams of cocaine. The State charged Matlock with class A felony dealing in cocaine, class C felony possession of cocaine, class D felony possession of marijuana, two counts of class D felony receiving stolen property, class D felony maintaining a common nuisance, and two counts of class C felony neglect of a dependent. Matlock filed a pretrial motion to suppress that reads in pertinent part as follows:

> 2.      On August 11, 2011, a police officer, without lawful authority, entered the Defendant's curtilage, exceeding the areas upon which visitors would be expected to be invited.
>
> 3.      Any information resulting from the unlawful entry was unlawfully obtained because:
>
> > a.      At the time the police office entered the Defendant's curtilage, the police officer neither had a warrant nor a justification for a warrantless entry and, thus, violated the Fourth Amendment to the United States Constitution.
> >
> > b.      Considering the totality of the circumstances, the police officer's warrantless entry into the Defendant's home was unreasonable and, thus, violated Article 1, Section 11 of the Indiana Constitution.

4

c. The police officer's continued presence of [sic] the Defendant's curtilage was neither justified by a warrant nor an exception to the warrant requirement and, thus, violated the Fourth Amendment to the United States Constitution.

d. Considering the totality of the circumstances, the police officer's continued presence on the Defendant's curtilage was unreasonable under Article 1, Section 11 of the Indiana Constitution.

Appellant's App. at 26-27. After a hearing, the trial court denied the motion.

At his jury trial, Matlock lodged a continuing objection to evidence relating to the search and seizure and asked to "incorporate the suppression hearing that [they] had on this particular issue." Tr. at 57. The trial court overruled the objection. Matlock was found guilty on all but the two receiving stolen property counts. This appeal ensued.

**Discussion and Decision**

Matlock summarizes his argument as follows:

When the police officers entered onto Matlock's back porch and peered through a partially covered window a warrantless search that [sic] took place. Dandre Matlock had a reasonable expectation of privacy on the back of his house. There are no sidewalks or pathways that would invite the general public to the back door. When the officer peered through the window and saw what appeared to be a controlled substance, Dandre Matlock's protections against unreasonable search and seizures was [sic] violated. The remedy is suppression of the evidence.

Appellant's Br. at 10.

The State argues,

[Matlock] wrongly frames the issue as whether the officers conducted an illegal warrantless search of his residence that violated the Fourth Amendment. This is not a case where the officers entered a residence without a warrant by relying on exigent circumstances. The issue is actually whether

5

the trial court correctly admitted evidence obtained from a search of [Matlock's] residence that was authorized by a warrant.

Appellee's Br. at 11. We must agree. The State further argues that Matlock "waived any challenge to the search of his residence authorized by a warrant by never claiming before the trial court or in his brief on appeal that the warrant that authorized the search of his residence was invalid." *Id*. at 12. Again, we must agree. *See Gill v. State*, 730 N.E.2d 709, 711 (Ind. 2000) ("It is well-settled law in Indiana that a defendant may not argue one ground for objection at trial and then raise new grounds on appeal.").[3] Therefore, we affirm Matlock's convictions.

Affirmed.

KIRSCH, J., and MATHIAS, J., concur.

---

[3] The State correctly observes that in his motion to suppress, Matlock

> argued only that the officers' observations through his back patio window violated his constitutional rights. [Matlock's] motion to suppress repeatedly references the lack of a warrant to enter [Matlock's] curtilage and never mentions that the officers had indeed obtained a warrant.… At the pretrial motion to suppress hearing, [Matlock] again failed to argue that the warrant was invalid.

Appellee's Br. at 12-13. The State also points out that "[a]t trial, [Matlock] never argued that the warrant was defective. [Matlock] only asserted generally that the search and seizure violated his federal and state constitutional rights." *Id*. at 13 (citation to transcript omitted). Matlock makes a "fruit of the poisonous tree" argument at the end of his appellate brief, but this is too little, too late.

6